IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DOUGLAS P. LABORDE, *et al.,*      :

           Plaintiffs,      :

v.      :

CITY OF GAHANNA, *et al.,*      :

           Defendants.      :

:     CASE NO. 2:12-cv-00697

:     JUDGE FROST
:     MAGISTRATE JUDGE KEMP

## DEFENDANTS CITY OF GAHANNA AND GAHANNA FINANCE DIRECTOR JENNIFER TEAL'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

NOW COME DEFENDANTS CITY OF GAHANNA AND GAHANNA FINANCE DIRECTOR JENNIFER TEAL ("DEFENDANTS"), by and through counsel, and file this reply in support of their December 3, 2012 motion. With their motion, Defendants established Form 37, the Individual Municipal Income Tax Return, does not violate the Fifth Amendment's prohibition against the taking of private property for public use without just compensation. Absent this federal claim, the Court does not have jurisdiction over LaBorde's complaint. Defendants also established the Tax Injunction Act, as codified in 28 U.S.C. § 1341, demands dismissal of LaBorde's injunctive claim. In response, LaBorde argues the merits of an irrelevant hypothetical, fails to cite any authority actually supporting the Takings Claim, and seemingly agrees to dismiss the claim for injunctive relief.

**A.** **Form 37 does not violate the Fifth Amendment's Taking Clause.**

Form 37, the Individual Municipal Income Tax Return, was created by the RITA. *See* LaBorde's complaint at Exhibit G for the RITA 2011 Form 37 and its instructions. Form 37 is accepted by RITA, on behalf of the City of Gahanna, for the purpose of reporting wage and/or schedule income. With Count 5, LaBorde claims "Form 37, as prescribed by Defendants, does not conform with existing law, specifically City Code Section 161.18." Complaint at ¶ 98. According to LaBorde, "Form 37 does not properly calculate the Tax credit," and therefore results in an overpayment of municipal income tax. *Id.* at ¶¶ 78 and 81. For LaBorde, this overpayment of municipal income tax constitutes an unconstitutional taking.

While opposing Defendants' motion, LaBorde makes one thing clear. "The LaBordes and the class are asserting a per se taking." Plaintiffs' memo contra, p. 6. Given the instant action does not involve the physical invasion of property, LaBorde's argument is fatally flawed and LaBorde's claim is without merit. In *Lingle v. Cheron,* 544 U.S. 528, 528, 125 S. Ct. 2075, 161 L.Ed.2d 876 (2005), the court articulated the sole instances where a *per se* taking may occur,

> Regulatory actions generally will be deemed *per se* takings for Fifth Amendment purposes (1) where government requires an owner to **suffer a permanent physical invasion of her property,** *(Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868), or (2) where regulations **completely deprive an owner of "all economically beneficial us[e]" of her property.** *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1019, 112 S.Ct. 2886, 120 L.Ed.2d 798. (Emphasis added).

"[O]utside these two relatively narrow categories, regulatory takings challenges are governed by the standards set forth in *Penn Central.*" *Lingle,* 544 U.S. at 538; *see also, Penn Central Transp. Co. v. City of New York,* 438 U.S. 104, 124, 98 S. Ct. 2646 (noting that a taking may more readily be found when the interference with property can be characterized as a physical invasion by government, than when interference arises from some public program adjusting the benefits and

burdens of economic life to promote the common good). Thus, where a regulatory action is concerned, in order to establish a *per se* taking, the claimant must demonstrate either permanent physical invasion of his/her property, or a complete deprivation of all economically beneficial use of the property. LaBorde cannot meet this high burden.

The Supreme Court has specifically addressed the issue and determined a requirement to pay taxes is not a *per se* taking. The reasoning supporting this conclusion is simple – money is fungible in nature and cannot be physically occupied, or appropriated like real or tangible property. *See United States v. Sperry Corp.*, 493 U.S. 52, 62 n. 9, 110 S.Ct. 387, 107 L.E. 2d 290 (1989) (considering and rejecting the view that money is private property that can be physically occupied by the government; stating "[i]t is artificial to view deductions of a percentage of a monetary award as physical appropriations of property. Unlike real or personal property money is not fungible."); *see also, Eastern Enterprises v. Apfel*, 524 U.S. 498, 118 S. Ct. 2131, 141 L.Ed.2d 451 (1998) (noting that requiring money to be spent is not a taking of private property).

Here, LaBorde cites no authority (indeed because none exists) for the proposition that an exercise of a municipality collecting income tax constitutes a permanent, physical invasion of property, or completely deprives the owner of all economically beneficial use of the property. LaBorde's sole support for a *per se* taking is the case of *Brown v. Legal Found of Wash.*, 538 U.S. 216, 123, S.Ct. 1406, 155 L.Ed.2d 376 (2003). *Brown* affirmed the holding in *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 172, 118 S.Ct. 1925, 141 L.Ed.2d 174, namely that interest generated by funds held in IOLTA accounts are the private property of the owner of the principal. However, the use of the *per se* analysis in *Brown* relied solely on the fact the ad hoc factors of *Penn Central* were inapplicable given the holding in *Phillips*. The court noted,

> The Court's jurisprudence concerning condemnations and physical takings involves the straightforward application of *per se* rules, while its

3

regulatory takings jurisprudence is characterized by essentially ad hoc, factual inquiries designed to allow careful examination and weighing of all relevant circumstances. *Tahoe–Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,* 535 U.S. 302, 322, 122 S.Ct. 1465, 152 L.Ed.2d 517. Petitioners separately challenged (1) the requirement that their funds must be placed in an IOLTA account and (2) the later transfers of interest to the Foundation. The former is merely a transfer of principal and therefore does not effect a confiscation of any interest. Even if viewed as the first step in a regulatory taking which should be analyzed under the *Penn Central* factors, it is clear that there would be no taking because the transaction had no adverse economic impact on petitioners and did not interfere with any investment-backed expectation. A *per se* approach is more consistent with the Court's reasoning in *Phillips* than *Penn Central's* ad hoc analysis. *Id.* at 216-217.

The use of a *per se* approach in order to find a taking in *Brown* relied on the fact that petitioner Brown, as an attorney, could not have suffered an adverse economic impact, or had an investment backed expectation, given that he was not the party entitled to the principal amount of money in question. Thus, the *per se* approach was used solely because the factors of *Penn Central* were inapplicable to find a taking in the present.

Put simply, where a regulation is challenged, a *per se* taking cannot be found unless the property owner suffers a permanent physical invasion of his/her property, or is deprived of *all* economically beneficial use of the property. As the *Sperry* court noted, money is not a commodity that can be physically occupied by the government due to its largely fungible nature, nor can the requirement that money be spent be deemed a *per se* taking for Fifth Amendment purposes. *See Sperry, Apfel, supra.* Therefore, LaBorde's argument that the use of Form 37 creates a *per se* taking fails.

**B.  LaBorde does not have private property interest in a municipal tax credit.**

In order to have a valid Fifth Amendment claim, the claimant must demonstrate an underlying property right.  So, in a despite attempt to ground their Fifth Amendment claim,

LaBorde attempts to establish a private property right to a tax credit. LaBorde argues "[c]redits, such as the one at issue here, are intangible property rights of the taxpayer." Plaintiffs' memo contra, p. 7. LaBorde's reasoning is misplaced. As the Supreme Court taught us in *Eastern Enterprises v. Apfel*, 524 U.S. 498, 543, 118 S. Ct. 2131, 141 L.Ed.2d 451 (1998), "we have been careful not to lose sight of the importance of identifying the property allegedly taken, lest all governmental action be subjected to examination under the constitutional prohibition against taking without just compensation, with the attendant potential for money damages." In *United States Shoe Corporation v. United States*, 296 F.3d 1378 (Fed. Cir. 2002), the court explicitly rejected the argument that a corporation has a private property right to interest on a tax previously paid, noting the tax "did not appropriate, transfer, or encumber an estate in land..., a valuable interest in an intangible, or even a bank account or its associated accrued interest." *Id.* at 1831.

LaBorde then attempts to characterize a municipal income credit as an "intangible property right of the tax payer." Plaintiffs' memo contra, p. 7. LaBorde cites Ohio Rev. Code § 5701.09, defining other taxable intangible and other intangible property. Section 5701, however, deals specifically with taxable property to be included as ordinary income. *See generally, Warm Bros, Inc. v. Bowers*, 120 Ohio App. 121, 124, 196 N.E.2d 799, 801 (1964) (holding items listed by house contractors in personal property tax returns as Construction in Progress being material put in place on land, constituted a part of real estate of house owners were not contract rights taxable to contractors under statute as 'other taxable intangibles'). LaBorde's reliance is misplaced because "credit" is **specifically exempted,** by statute, from the statutory definition of an 'other intangible.' Ohio Rev. Code § 5701.07, which defines 'credit,' states

> Credit means the excess of the sum of all current accounts receivable and prepaid items used in business when added together, estimating every such account and item at its true value in money, over and above the sum of current accounts payable of the business, other than taxes and assessments.

> **Thus, credits are expressly excluded from other intangibles as set forth therein.** (Emphasis added).

Therefore, pursuant to Ohio Rev. Code § 5701.07's plain language, a credit does not qualify as an intangible property right because it is specifically exempted from such statutory definition. Had the Ohio General Assembly wanted any other conclusion, it would not have chosen the words it did.

Furthermore, "[m]ere unilateral expectation or an abstract need is not a "property interest" entitled to protection under Fifth Amendment." *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161, 101 S. Ct. 446, 66 L.Ed.2d 358. In defining what is an intangible property interest, the Sixth Circuit articulated the following in *In Re Girton, Oaks & Burger, Inc.*, 326 B.R. 901 (Sixth Cir., 2005):

> *Black's Law Dictionary* defines "intangible property" as "[p]roperty that lacks a physical existence." *Black's Law Dictionary* (8th Ed.2004) (found within the definition of "property"). *American Jurisprudence* states that "[i]ntangibles consist of rights not related to physical things, but that are merely relationships between persons, natural or corporate, which the law recognizes by attaching to them certain sanctions enforceable in the courts." 63C *Am.Jur.2d Property* § 9 (2004). *Corpus Juris Secundum* similarly provides that "[i]ntangible property is property that has no intrinsic and marketable value, but is merely representative or evidence of value, such as certificates of stock, bonds, promissory notes, and franchises." 73 *C.J.S. Property* § 37 (2004).

*See also, Loveman v. Hamilton,* 66 Ohio St. 2d 183, 185, 420 N.E.2d 1007 (1981) (referring to "a contract right and the right to bring a cause of action in a court of law" as examples of intangible property rights); *see also, Citizens' Nat. Bank of Cincinnati v. Durr,* 257 U.S. 99, 108, 42 S.Ct. 15, 66 L.Ed. 149 (1921) (referring to "contract rights" as "intangibles"); *Toledo Blank, Inc. v. Pioneer Steel Serv. Co.,* 98 Ohio App. 3d. 109, 113, 648 N.E.2d 1 (Sixth Dist., 1994) (determining that "an account receivable is a contract right and, therefore, is a chose in action and intangible property");

*Ruckelshous v. Monsanto Co.,* 467 U.S. 986, 990, 104 S. Ct. 2862, 21 ERC 1062 (1984) (noting that trade secrets are intangible property rights deserving of state law protection).

LaBorde cites *Woda Ivy Glen, L.P. v. Fayette County Bd. of Revision*, 121 Ohio St. 3d 175, 184, 902 N.E.2d 984 (2009) for the proposition that tax credits "constitute a separate intangible asset." Plaintiffs' memo contra, p. 8. The facts in *Woda* bear virtually no relation to those presented herein. The issue in *Woda* involved whether government subsidies, in the form of tax credits, given to developers to develop low income housing should be included in evaluating real property for taxation purposes. The *Woda* court noted that tax credits *Woda* received were a separate intangible asset from the use restrictions imposed on the property, and thus should not be considered in a cost-based valuation of the property for taxation purposes. *Id.* at 186. Clearly, whether government tax credits for low income housing should be taken into account in evaluating real property for taxation purposes is distinguishable from the facts presented in the case at bar. LaBorde is not attempting to examine a tax credit in the context of real property, but rather is attempting to demonstrate the use of Form 37 results in an overpayment, thus creating a taking. To rely on such a case to establish a tax credit constitutes a separate intangible property right, when it is specifically excluded from the statutory definition of intangible rights, subject to a per se taking is wholly erroneous.

LaBorde cannot establish a *per se* taking because they have not established a private property right to the tax credit at issue. A right to the credit is not created via the Ohio Revised Code because a credit is defined separately, and is specifically excluded from various intangible rights. Further, a mere unilateral expectation of a tax credit does **not** transform the expectation into an intangible property right. Finally, courts have extensively articulated what constitutes an intangible property right, and a tax credit has never been defined as such. The right to an offset, or

7

a credit, via Gahanna City Code § 161.08 is clearly not something conditioned on a relationship between parties, but is rather a measurable, tangible asset that can be readily identified and calculated. LaBorde's Fifth Amendment claim fails because LaBorde cannot establish a private property right to the tax credit at issue.

LaBorde argues adamantly that they are not challenging the imposition of the municipal income tax. "To be clear the LaBordes are not questioning whether Gahanna or RITA have the authority to collect taxes (they do), or whether Section 161 of the Gahanna City Code (the "City Code") is an illegal tax (it is not)." Plaintiffs' memo contra, p. 2. What LaBorde is challenging is the use of Form 37. The use of Form 37 is not mandatory, but was designed solely by RITA to serve as an administrative convenience for taxpayers. *See* Affidavit of Jennifer Teal. "Form 37 is accepted by RITA, on behalf of the City of Gahanna, for the purpose of reporting wage and/or schedule income. It is not the exclusive method of reporting wage and/or schedule income." *Id.*

Form 37 operates as an administrative courtesy to the residents of the City of Gahanna. In virtually no way is use of the form mandatory in calculating an individual's income tax liability. Apparently, LaBorde is arguing the taxpayer's decision to use a wholly non-mandatory form effects a *per se* taking of private property without just compensation. Clearly, this argument must fail. Form 37 is a reasonable administrative user convenience. Further, given the non-mandatory use of the Form, LaBorde cannot possible argue a property right has been established pursuant to which they are entitled to a credit.

## C. The Tax Injunction Act operates as a bar to federal jurisdiction.

LaBorde wants this Court to believe Defendants have a "fundamental misunderstanding of this lawsuit." Plaintiffs' memo contra, p. 12. LaBorde claims the "purpose of the lawsuit is not to

stop the Defendants from the assessment, levy, or collection of any taxes; indeed, the purpose of this lawsuit is quite the opposite – it is requesting that the Defendants follow the City Code." Plaintiffs' memo contra, p. 11. LaBorde also claims they are not seeking to enjoin the "illegal collection of municipal income tax. *Id* at p. 12. The Court should not be persuaded. LaBorde is doing nothing more than trying to wordsmith around dismissal. If LaBorde is not claiming the use of Form 37 is an illegal collection of municipal income, what is it? LaBorde's argument is a distinction without a difference.

As the Tax Injunction Act states, "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." Here, the method for assessing the tax is precisely what LaBorde is challenging, namely the collection of municipal income tax thru the use of Form 37. Thus, the Tax Injunction Act is applicable, and the Court may not exercise jurisdiction over LaBorde's injunctive claim.

LaBorde's attempt to argue this case "falls within the ambit" of the Supreme Court's decision in *Hibbs v. Winn*, 542 U.S. 88, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004) is equally unavailing. "To determine whether the TIA bars this litigation, it is appropriate, first, to identify the relief sought." *Id.* at 99. The Act was designed expressly to restrict "the jurisdiction of the district courts of the United States over suits relating to the collection of State taxes." *Id.* at 103. "In enacting the TIA, Congress turned its attention on taxpayers who sought to avoid paying their tax bill by pursuing a challenge route other than the one specified by the taxing authority." *Id.* In the case at bar, LaBorde seeks to accomplish precisely what the TIA prohibits – pursuing a challenge route by one other than the taxing authority.

Finally, LaBorde states they and the class "are willing to forego any available injunctive relief until a final resolution has been made with respect to the consideration of the City Code sections at issue in their case and final certification of an injunctive class under Federal Rule of Civil Procedure 23(b)(2) has occurred." Plaintiffs' memo contra, p. 11.   Obviously, if LaBorde wishes to dismiss Count 7, it would moot application of the TIA.

### D.  This Court will not abuse its discretion if it decides not to exercise supplemental jurisdiction over LaBorde's remaining state law claims.

The remaining Counts contained in LaBorde's complaint (Counts One, Two, Three, Four, Eight and Nine) set forth state law claims.  With their motion, Defendants confirmed this Court need not exercise supplemental jurisdiction over LaBorde's remaining state law claims.   In response, LaBorde makes up three factors they claim allow this Court to retain supplemental jurisdiction after it dismisses LaBorde's federal claim – "the parties have conducted written discovery, have scheduled oral depositions for January 2013, and the LaBordes have begun preparations of their motion for class certification under Federal Rule of Civil Procedure 23. Plaintiff's motion, p. 13.  While Defendants do not dispute these facts, they are not actual factors that should be considered when determining whether to retain jurisdiction over state-law claims. Instead, this Court should weigh the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951–52 (6th Cir. 2010) (citations omitted).

In the present matter, LaBorde's "factors" are items that will be done regardless of whether their state law claims are decided by this Court or the Franklin County Court of Common Pleas. Aside from having the class action potentially certified under Ohio rather than federal law, LaBorde will continue to prosecute this case no differently.   Judicial economy, convenience,

fairness, and comity do not require this Court retain supplemental jurisdiction over LaBorde's state law claims.

WHEREFORE, DEFENDANTS CITY OF GAHANNA AND GAHANNA FINANCE DIRECTOR JENNIFER TEAL respectfully request this Court dismiss LaBorde's Fifth Amendment claim and remand this case to state court.

Respectfully submitted,

WILES, BOYLE, BURKHOLDER
& BRINGARDNER CO., LPA


/s/Brian M. Zets
Brian M. Zets (0066544)
300 Spruce Street, Floor One
Columbus, Ohio 43215-1173
(614) 221-5216
(614) 221-4541 (FAX)
Email: bzets@wileslaw.com
*Trial Attorney for Defendants*
*City of Gahanna and Jennifer Teal*


## CERTIFICATE OF SERVICE

I certify that on this 14th day of January 2013, I electronically filed a copy of the foregoing *Reply to Plaintiff's Response to Defendants' Motion to Dismiss* with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record. All Parties may access this filing through the Court's system.

/s/ Brian M. Zets
Brian M. Zets

11